UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THOMAS WEBSTER**, <br><br> Plaintiff, <br><br> v. <br><br> **FEDERAL BUREAU OF INVESTIGATION**, <br><br> Defendant. | Case No. 24-cv-387 (CRC) |

## MEMORANDUM OPINION

Plaintiff Thomas Webster, a former New York City police officer, was convicted by a jury and sentenced to ten years in prison for violently assaulting a fellow officer who was attempting to protect the United States Capitol from a riotous mob on January 6, 2021.  See Transcript of Sentencing Proceedings at 63, United States v. Webster, No. 21-cr-208 (APM) (D.D.C. Sep. 22, 2022), ECF No. 124.  Following his sentencing, Webster lodged a Freedom of Information Act ("FOIA") request with the Federal Bureau of Investigation ("FBI") seeking records concerning an unrelated investigation of the officer he assaulted, Noah Rathbun of the Washington, D.C. Metropolitan Police Department ("MPD").[1]  Citing Officer Rathbun's privacy interests, the FBI issued a *Glomar* response, declining to confirm or deny the existence of responsive records.  Webster challenges that response in this *pro se* lawsuit.  The FBI's *Glomar* response was proper.  The Court will, accordingly, grant the FBI's motion for summary judgment and dismiss the case.

---

[1] Webster understandably may have sought the requested records in connection with his unsuccessful appeal of his conviction.  See United States v. Webster, 102 F.4th 471, 490 (D.C. Cir. 2024).  But he has persisted litigating this case since he and other convicted January 6th rioters were granted full pardons in January 2025.

I. **Background**

On May 24, 2021, MPD officers were dispatched to locate a suspect who was holding his ex-girlfriend against her will. Webster Reply, Attach. 1, at 1–2. Upon encountering one of the officers, the suspect reportedly "took up a shooting stance and pointed [a] rifle at the officer." Id. at 2. The officer shot and killed him. Id. Later that year, the D.C. United States Attorney's Office ("USAO") announced that, along with MPD, it had "conducted a comprehensive review of the incident" and "found insufficient evidence to prove beyond a reasonable doubt that the officers used excessive force under the circumstances." Id. at 1–2.

On May 2, 2022, plaintiff Thomas Webster was convicted of six criminal counts stemming from his involvement in the siege of the U.S. Capitol on January 6, 2021. Jury Verdict, United States v. Webster, No. 21-cr-208 (APM) (D.D.C. May 2, 2022), ECF No. 86. A number of the counts related to his violent assault of MPD Officer Noah Rathbun, who testified as a witness in Webster's trial. See Transcript Jury Trial Proceedings at 8–102, United States v. Webster, No. 21-cr-208 (APM) (D.D.C. Sep. 20, 2022), ECF No. 117. The Honorable Amit Mehta of this court sentenced Webster to ten years in prison on September 1, 2022. See Transcript Sentencing Proceedings at 63, United States v. Webster, No. 21-cr-208 (APM) (D.D.C. Sep. 22, 2022), ECF No. 124.

In June 2023, Webster submitted a FOIA request to the FBI seeking "*[a]ll* investigation notes and documentation regarding Officer Noah Rathbun, [MPD], regarding any and all incidents occurring on May 24, 2021." Compl. at 4 (emphasis in original) (page number designated by CM/ECF). Webster did not include a privacy waiver from Officer Rathbun or any other third party. FBI Mot. Summ. J., Declaration of Shannon Hammer ("Hammer Decl.") ¶ 18. The FBI denied Webster's request, issuing a *Glomar* response neither confirming nor denying

2

the existence of responsive records.  Id. ¶ 6.  Webster appealed to the Department of Justice's Office of Information Policy ("OIP"), noting that "the request seeks documents related to the investigation of a shooting involving Officer Rathbun which has since been closed."  Id. ¶ 7.  OIP denied the appeal.  Id. ¶ 9.  The final denial advised that "confirming or denying the existence of records . . . would create a reasonably foreseeable harm to the interest protected by FOIA Exemptions 6 and 7(C)."  FBI Mot. Summ. J. at 3.

In January 2024, Webster initiated this lawsuit to compel the FBI to search for and acknowledge the existence or nonexistence of the requested files.  Compl. at 1.  The FBI has moved for summary judgment, which Webster opposes.

## II. Legal Standards

### A. Summary Judgment on FOIA Exemptions

Summary judgment may be granted when the moving party establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Summary judgment is the typical mechanism for determining whether an agency has met its FOIA obligations.  See, e.g., Jud. Watch, Inc. v. CFPB, 60 F. Supp. 3d 1, 6 (D.D.C. 2014) (citation omitted).

To obtain summary judgment after invoking a FOIA exemption, an agency must first show that the material falls under one of nine enumerated exemptions.  Larson v. Dep't of State, 565 F.3d 857, 861–62 (D.C. Cir. 2009) (citation omitted).  Agencies can do so by providing sufficiently detailed declarations.  Id. at 863.  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  Jud. Watch, Inc. v. Dep't of Def., 715 F.3d 937, 941 (D.C. Cir. 2013) (internal quotation marks omitted) (citation omitted).  Because the primary purpose of FOIA is disclosure, exemptions are construed narrowly.

DiBacco v. U.S. Army, 795 F.3d 178, 183 (D.C. Cir. 2015) (citation omitted). Further, the agency must make a "focused and concrete" showing that disclosing the withheld records would cause foreseeable harm. Reps. Comm. for Freedom of the Press v. FBI, 3 F.4th 350, 370 (D.C. Cir. 2021); 5 U.S.C. § 552(a)(8)(A)(i)(I).

  B. *Glomar* Responses

Courts have recognized that in "certain cases, merely acknowledging the existence of" records responsive to a FOIA request "would itself 'cause harm cognizable under [a] FOIA exception.'" People for the Ethical Treatment of Animals v. NIH, 745 F.3d 535, 540 (D.C. Cir. 2014) (citation omitted). In these situations, an agency may issue what is known as a "*Glomar* response," refusing to confirm or deny the existence of any responsive records. Id. A *Glomar* response is appropriate "if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." Id. (citation omitted). Courts can rely on agency declarations in evaluating a *Glomar* response. Id. The FBI has filed such a declaration here. See Hammer Decl.

**III. Analysis**

Webster opposes the FBI's summary judgment motion on two grounds. First, he argues that the agency waived its *Glomar* response by publicly acknowledging the existence of an investigation into May 24, 2021, shooting. Second, he challenges the FBI's assertion of FOIA Exemptions 6 and 7(C) as bases for its *Glomar* response, insisting that the public benefit derived from learning more about Officer Rathbun's purported role in the shooting outweighs the officer's privacy interests. The Court rejects both arguments.

  A. The FBI Did Not Waive its *Glomar* Response

Webster has not established that the FBI has previously acknowledged the existence of an investigation into the May 24, 2021, incident described above and therefore has not shown that

4

the agency waived its *Glomar* response. Webster's argument to the contrary erroneously equates public acknowledgement of an investigation by other agencies with acknowledgement by the FBI that it investigated Officer Rathbun.

As noted, an agency may issue a *Glomar* response where acknowledging the existence or nonexistence of records would implicate an interest protected by a FOIA exemption. An agency may not issue a *Glomar* response, however, if it has already publicly acknowledged the existence of the records sought. Am. C. L. Union v. CIA, 710 F.3d 422, 426–27 (D.C. Cir. 2013). A plaintiff bears the burden of proving such public acknowledgment by "pinpoint[ing] an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency." Moore v. CIA, 666 F.3d 1330, 1333 (D.C. Cir. 2011) (citing Wolf v. CIA, 473 F.3d 370, 378 (D.C. Cir. 2007)).

Webster argues that the FBI has waived its *Glomar* response because the USAO and MPD investigation is a "matter[] of public record." Webster Reply at 8. But disclosure by other agencies does not invalidate the FBI's *Glomar* response. See Moore, 666 F.3d at 1333 n.4. Rather, Webster "must show that *the FBI* has acknowledged that *it* investigated" the matter. Donato v. Exec. Off. for U.S. Att'ys, 308 F. Supp. 3d 294, 310 (D.D.C. 2018) (Jackson, J.) (emphasis in original) (holding that disclosure of an investigation by other agencies does not waive the FBI's *Glomar* response). The FBI is a separate agency from both the D.C. USAO and the MPD. And although the FBI and USAO are both arms of the DOJ, "there is no basis to conclude . . . that the FBI conducts all government investigations mentioned by other components of DOJ." Donato v. Exec. Off. for U.S. Att'ys, No. 16-cv-632 (FYP), 2021 WL 5161740, at *4 (D.D.C. Nov. 5, 2021) (upholding the FBI's *Glomar* response after other agencies within DOJ publicly acknowledged an investigation); see also Donato, 308 F. Supp. 3d

at 310 (same).  Webster therefore has not shown public involvement by the FBI in the May 21, 2024, incident investigation.  Nor has he shown either that the FBI has acknowledged the existence of a role in that investigation (or a separate investigation), or that the FBI has acknowledged the existence of the records sought.

      B.  The FBI Properly Invoked FOIA Exemptions 6 and 7(C)

The FBI is also correct that acknowledgement of the alleged investigation falls under FOIA Exemptions 6 and 7(C).  Exemption 6 shields "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]"  5 U.S.C. § 552(b)(6).  Exemption 7(C), meanwhile, screens "records or information compiled for law enforcement purposes" the production of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]"  Id. § 552(b)(7).

As a threshold matter, the requested information undeniably falls under the categories protected by the exemptions.  The "personnel" and "similar files" encompassed by Exemption 6 are "intended to cover detailed Government records on an individual which can be identified as applying to that individual."  U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 89-1497, at 11 (1966)).  And Webster's request facially targets government records that identifiably apply to Officer Rathbun.  See Compl. at 4.  Further, as Webster concedes, "[t]here is no question that the [purported] records sought in this matter were compiled for law enforcement purposes."  Webster Reply at 11.[2]

---

[2] In a different context, the FBI's bare assertion that Webster "clearly sought records compiled for law enforcement purposes," FBI Mot. Summ. J. at 10, might make it difficult to determine whether the government has borne its burden to demonstrate a sufficient "nexus" between the activity giving rise to the alleged documents and the agency's law-enforcement duties, see Pratt v. Webster, 673 F.2d 408, 420 (D.C. Cir. 1982) (holding that a law-enforcement agency must "identify . . . the connection between [the object of its investigation] and a possible security risk or violation of federal law[]" to invoke Exemption 7).  But here, in addition to

Once it is established that all requested files fall under the protected categories, Exemptions 6 and 7(C) are analytically quite similar. See Reed v. NLRB, 927 F.2d 1249, 1251 (D.C. Cir. 1991); Jud. Watch, Inc. v. U.S. Dep't of Just., No. 23-cv-1485 (CRC), 2024 WL 4039924, at *5 (D.D.C. Sept. 4, 2024) (Cooper, J.). To invoke either exemption, an agency must show that the requested information implicates a "substantial, as opposed to a *de minimis*, privacy interest." Nat'l Ass'n of Retired Fed. Emps. v. Horner, 879 F.2d 873, 874 (D.C. Cir. 1989). If it clears this threshold, the Court must then weigh that privacy interest against any public interest in disclosure to determine whether the privacy invasion is "clearly unwarranted." Id. at 875 (citation omitted). And "[t]he only relevant public interest in disclosure is 'the extent to which disclosure would . . . contribut[e] significantly to public understanding of the operations or activities of the government.'" Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Hum. Servs., 554 F.3d 1046, 1051 (D.C. Cir. 2009) (quoting U.S. Dep't of Def. v. Feb. Lab. Rels. Auth., 510 U.S. 487, 487 (1994) (cleaned up)). The only difference is that invoking Exemption 6 to justify nondisclosure requires a *clearly* unwarranted invasion of privacy and thus that the balance tip further toward the private interest. See Seized Prop. Recovery Corp. v. U.S. Customs & Border Prot., 502 F. Supp. 2d 50, 60 (D.D.C. 2007).

Therefore, the Court must determine (a) whether the requested information implicates a substantial privacy interest; and (b) whether that interest is overridden by a public interest in disclosure.

---

Webster's concession, the context allows for no conclusion other than that the records, should they exist, would have been compiled as part of a law enforcement investigation.

*1. Webster's Request Implicates a Substantial Privacy Interest*

The acknowledgment of alleged investigatory files would plainly implicate Officer Rathbun's substantial privacy interest.  Rather than asking about an investigation into the May 21, 2021, incident itself, Webster's request specifically targets Officer Rathbun.  Compl. at 4.[3] And any potential revelation concerning a law-enforcement investigation that included Officer Rathbun would be foreseeably damaging.  See Roth v. U.S. Dep't of Just., 642 F.3d 1161, 1174 (D.C. Cir. 2011) ("[W]e have long recognized, [that] the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." (internal quotations removed)).  Even if the subject of an investigation has been cleared of all wrongdoing, "[t]he allegations that may trigger" a law-enforcement investigation can "carry a stigma and can damage a career."  McCutchen v. U.S. Dep't of Health and Human Servs., 30 F.3d 183, 187 (D.C. Cir. 1994); cf. Carter v. U.S. Dep't of Com., 830 F.2d 388, 394 (D.C. Cir. 1987) ("[D]isclosure of information identifying a particular [person] as the subject of a dismissed disciplinary proceeding . . . would violate [his or her] substantial privacy interests[.]").[4] Disclosure of the existence of any FBI investigation that focused on Officer Rathbun could carry precisely this damaging stigma, and he therefore has a substantial privacy interest at stake.

---

[3] In his briefing, Webster insists that "the investigation itself" is the subject of his request, not "the individual."  Webster Reply at 7.  This is difficult to reconcile with the text of Webster's FOIA submission, which targets "*[a]ll* investigation notes and documentation regarding Officer Noah Rathbun," specifically.  Compl. at 4.

[4] Webster alleges that it is "public record" that Officer Rathbun's conduct was investigated by the USAO and MPD.  Webster Reply at 8.  But even if this is true, public knowledge of one law-enforcement inquiry does not neutralize Officer Rathbun's privacy interest regarding any additional investigations.  "[T]he fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information."  U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press, 489 U.S. 749, 770 (1989) (internal quotations removed) (citation omitted).

## 2. *The Private Interest Outweighs the Alleged Public Interest*

The Court now turns to whether the public interest in the release of information is such that "on balance, the disclosure" is an invasion of personal privacy that is either unwarranted or clearly unwarranted. Lepelletier v. FDIC, 164 F.3d 37, 48 (D.C. Cir. 1999). Webster asserts that the public has a significant interest in learning the "length" to which "investigators went to in determining the justification for the officer's actions[.]" Webster Reply at 13. Yet even if the claimed investigation took place, its disclosure would not "contribut[e] significantly to public understanding of the operations or activities of the government." Consumers' Checkbook, 554 F.3d at 1051. Confirmation of whether the files exist would only shed light on whether an investigation into Officer Rathbun's conduct occurred. If the files did exist and were ultimately released, there is a possibility that they might indicate whether the investigation was properly conducted. But acknowledgement of the files would reveal nothing about FBI investigations generally and the files themselves would likely reveal little more. Indeed, even if anything were amiss with the investigation, "a single instance [of government misconduct] . . . would not suffice to show a pattern of government wrongdoing as could overcome the significant privacy interest at stake" here. Boyd v. Crim. Div. of Dep't of Just., 475 F.3d 381, 388 (D.C. Cir. 2007); cf. Lane v. Dep't of Interior, 523 F.3d 1128, 1138 (9th Cir. 2008) ("That [Plaintiff] only seeks the report of one isolated incident makes it highly unlikely that disclosure would increase public understanding of government activities[.]").

Had Webster wanted to contribute to public understanding of the FBI's operations or activities, in line with the purpose of FOIA, he could have requested non-individualized reports from a range of investigations. In Department of Air Force v. Rose, 425 U.S. 352 (1976), the

Supreme Court approved a request for an anonymized collection of summaries of misconduct proceedings at the Air Force Academy.  Even there, with all identifying information redacted, the summaries presented real privacy concerns.  See id. at 380–81.  Nevertheless, the Court reasoned that the collection would shed light on the "fairness" and "administration of discipline" within the Academy and therefore carried an overriding public interest.  Id. at 367, 369, 381.  In stark contrast, Webster chose a single purported investigation into an incident that does not appear to have generated much public interest; targeted a specific individual (who so happened to have been a victim of Webster's assault and testified against him at trial); and failed to explain how the information would offer any insight into broader FBI investigation practices.  The public interest in his narrow request is therefore minimal and cannot, under any burden, override the significant privacy interest at issue.  Exemptions 6 and 7(C) both apply.

## IV. Conclusion

For the foregoing reasons, the Court will grant the FBI's motion for summary judgment.  A separate Order accompanies this opinion.

**SO ORDERED.**

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: July 29, 2025